# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARK CANAMAR, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MCMILLIN TEXAS MANAGEMENT | § | SA-08-CV-0516 FB (NN) |
| SERVICES, LLC and | § | |
| MCMILLIN TEXAS HOMES, LLC, | § | |
| | § | |
| Defendants. | § | |

### ORDER DENYING MOTION TO CLASSIFY DOCUMENT AS NON-PRIVILEGED AND TO REOPEN DEPOSITION (DOCKET ENTRY # 53)

This order addresses the plaintiff's motion requesting that a document unintentionally produced by the defendants be classified as non-privileged, and to reopen a deposition to question the affiant/deponent about the document.[1] I have jurisdiction to resolve the motion because it is nondispositive and because the district judge referred pretrial motions to me.[2] After considering the motion, the response, and the reply, I deny the motion.

**Background of the motion**. Plaintiff Mark Canamar is a member of the Texas Air National Guard and a former employee of defendants McMillin Texas Management Services, LLC and McMillin Texas Homes, LLC (together, McMillin). Canamar alleges McMillin harassed him throughout his employment and ultimately terminated him because of his military service.[3] Canamar sued McMillin alleging violations of the Uniformed Services Employment and

---

[1]Docket entry # 53.

[2]Docket entry # 32.

[3]Docket entry # 27.

Reemployment Rights Act of 1994 (USERRA), a statute prohibiting employers from discriminating against employees because of military affiliation.[4]

During discovery, McMillin produced a memo written by David Keeland— Canamar's supervisor and Vice-President of McMillin Texas Homes—memorializing interactions between Keeland and Canamar (the Keeland memo). Four months after producing the Keeland memo, McMillin determined that the document contained privileged information and sought to retrieve the Keeland memo under Federal Rule of Civil Procedure 26(b)(5)(B).[5] In his motion, Canamar argues that the Keeland memo should not be considered privileged material and asks to reopen Keeland's deposition to question Keeland about the memo.[6]

**Whether the Keeland memo is privileged**. McMillin maintains the Keeland memo is privileged because it was prepared in anticipation of litigation.[7] Ordinarily, a party cannot discover a document or other tangible thing that is prepared in anticipation of litigation by a party or a party's representative.[8] If the "primary motivating purpose behind the creation of the document

---

[4] *See* 38 U.S.C. § 4311(a) ("A person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership. . . .").

[5] Docket entry # 54, exh. D.

[6] Docket entry #53, p. 2-3. Canamar seeks to question Keeland about the memo in a new deposition because Keeland was instructed not to answer questions about the memo during his original deposition.

[7] Docket entry #54, p. 5-7.

[8] Fed. R. Civ. P. 26(b)(3). *See Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) ("Work product only protects documents produced by or for an attorney preparing litigation").

was to aid in possible future litigation" the document is entitled to protection.[9] As the party asserting the privilege, McMillin bears the burden of proving entitlement to the privilege.[10]

To show that the Keeland memo was prepared in anticipation of litigation, McMillin presented an affidavit by Ed Berlanga—Keeland's supervisor—stating that Arthur C. Nicholson III—McMillin's attorney—instructed him to prepare a memo memorializing interactions between Canamar and Keeland.[11] Berlanga explained that Nicholson was retained to advise the company on a separation agreement for Canamar because Canamar was going to be laid off.[12] Berlanga stated that Canamar refused to sign a separation agreement.[13] Berlanga then met with Nicholson, Patty Ellis—McMillin's Human Resources and Payroll Administrator—and Linda Gutierrez—Vice-President of Human Resources of McMillin's parent company.[14] Berlanga attested that during the meeting Nicholson asked him to obtain a written statement from Keeland documenting his interactions with Canamar.[15] Berlanga stated that he complied with Nicholson's request.[16]

---

[9] *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 592 (5th Cir. 2000) (citing *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). *See also United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) ("We conclude that litigation need not necessarily be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.") (citations omitted).

[10] Fed. R. Civ. P. 26(b)(3)(A)(i); *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985) ("The burden of establishing that a document is work product is on the party who asserts the claim. . . .").

[11] Docket entry # 54, exh. A.

[12] *Id*.

[13] *Id*.

[14] *Id*.

[15] *Id*.

[16] *Id*.

McMillin also submitted an affidavit from Nicholson in which Nicholson discussed why he asked Berlanga for the memo. Nicholson stated that after he learned Canamar refused to sign the separation agreement, he asked Berlanga to obtain a memo from Keeland because he believed Canamar would serve McMillin with a lawsuit or other legal action based on his military leave.[17] Nicholson explained that he needed to better understand and evaluate McMillin's position with regard to plaintiff's complaints, and events leading up to the termination.[18]

In response, Canamar argued that the Keeland memo should not be considered privileged information because Keeland was not asked directly by a lawyer to prepare the document.[19] Canamar also contended the memo is most appropriately characterized as a routine memo prepared in the ordinary course of business. He argued that because the memo is similar to other memos written by Keeland in the course of Canamar's employment it is outside the scope of the work-product privilege.[20]

Neither of these arguments is dispositive in determining whether a document is considered privileged information. McMillin's affidavits show that the Keeland memo was prepared after Canamar refused to sign the separation documents and after Nicholson learned that several weeks before his termination Canamar connected his military status and possible separation. There was

---

[17]Docket entry # 54, exh. B.

[18]*Id*.

[19]Docket entry # 53, p. 7. Keeland testified in his deposition that he did not remember specific conversations with an attorney about the Keeland memo and admitted that the person who asked him to write the memo was probably Berlanga. *See* docket entry # 53, exh. B, p. 130-31.

[20]Docket entry # 53, p. 6-7. Canamar also asked that certain statements in McMillin's response be stricken. Because I did not rely on the objected-to statements, ruling on the objections is unnecessary.

4

no need for Nicholson to ask Keeland to memorialize his recollections of events preceding Canamar's termination so long as the lay-off was an ordinary separation situation. McMillin's affidavits adequately show that the primary motivation behind the creation of the Keeland memo was to aid in possible future litigation.

**Whether McMillin waived its privilege.** Canamar also argued that McMillin waived its privilege as to the Keeland memo because McMillin failed to take reasonable steps to prevent the disclosure and omitted the Keeland memo from its privilege log.[21] However, after McMillin asserted the work-product privilege and attempted to call-back the document, Canamar waited five months before seeking the court's assistance. Although the procedural rules anticipate situations like this one,[22] Canamar did not promptly present the information to the court for determination of the claim of privilege. McMillin sought to pull back the McMillin memo on January 21, 2009; Canamar waited until June 8, 2009—after Keeland's deposition—to challenge the privilege assertion. Considering the conduct of both parties, I conclude that the interests of justice warrant a finding that McMillin's delay in asserting the privilege does not constitute a waiver of same.

**Whether Canamar has shown a substantial need for the Keeland memo.** Even if a document is privileged, it may nevertheless be discoverable, but the burden of proof shifts to the party seeking production of the privileged material.[23] A party seeking discovery of a privileged

---

[21] Docket entry # 59, p. 13-14.

[22] *See* Fed. R. Civ. Proc. 26(b)(5) (B) ("After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.").

[23] *Hodges*, 768 F.2d at 721 ("[T]he burden of showing that the materials that constitute work product should none the less be disclosed is on the party who seeks their production.").

document may obtain the document by showing that the facts within the document are substantially necessary to the case and that there is no other way to obtain similar information without undue hardship on the party seeking discovery.[24] If the material is classified as an opinion work product, a party is held to a higher burden.[25] Because the Keeland memo relates to events preceding Canamar's termination and does not contain an attorney's mental impressions or opinions, Canamar must meet the burden of proof for fact-based work product.[26]

Canamar asserted that he has a substantial need for the Keeland memo because it is a contemporaneous explanation showing Keeland's discriminatory intent when making the decision to terminate Canamar's employment.[27] Canamar maintained the Keeland memo shows that Canamar's military service annoyed Keeland.[28] Canamar argued that he cannot obtain substantially equivalent evidence through other means without undue hardship, and insisted that he has no way to obtain Keeland's mental thought process at the time of the termination except through the challenged memo.[29]

Canamar's arguments fail for two reasons. First, the Keeland memo does not contain Keeland's mental thought process at the time of Canamar's termination nor does it suggest a

---

[24] Fed. R. Civ. P. 26(b)(3)(A).

[25] Fed. R. Civ. P. 26(b)(3)(B).

[26] *See In Re Int'l Sys. & Controls Cor. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) ("Since these documents are not 'opinion work product,' the plaintiffs do not have to make the even higher showing required.").

[27] Docket entry # 53, p. 9.

[28] *Id.*

[29] *Id.*

6

discriminatory motive. Instead, the memo merely memorialized interactions between Keeland and Canamar.[30] Second, Canamar had an opportunity at Keeland's deposition to examine Keeland's thought processes. Had Canamar promptly requested a ruling from the court on the privilege claim as Rule 26(b)(5)(B) suggests, plaintiff could have developed additional deposition questions for Keeland relevant to his thought processes independent of the Keeland memo. Because plaintiff has failed to show that the information in the Keeland memo is substantially necessary to his case or that there is no other way to obtain similar information without undue hardship, the claim of privilege is upheld.

**Court's order**. For the reasons discussed in this order, I DENY Canamar's request that the Keeland memo be classified as non-privileged and the request to reopen Keeland's deposition (docket entry #5 3). Canamar is directed to return or destroy the Keeland memo and any copies within five days of this order. McMillin's motion to file a sur-response to Canamar's reply (docket entry # 58) is DENIED as moot.

**SIGNED** on July 17, 2009.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[30]*Id.*, pp. 3, 7-8.